UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ANGELA M. WOODWARD                                                              PLAINTIFF

v.                                                         CIVIL ACTION NO. 3:14-CV-00776-CRS

ELIZABETHTOWN COMMUNITY AND                                                    DEFENDANTS
TECHNICAL COLLEGE, ET AL.

## **MEMORANDUM OPINION**

This matter is before the Court on Defendants Elizabethtown Community and Technical College ("ECTC"), Tom Davenport, and Diane Owsley's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (DN 8). Defendants contend that the Complaint (DN 1-1) of Plaintiff Angela M. Woodward, *pro se*, fails to state a claim upon which relief can be granted because sovereign immunity and insufficient factual allegations preclude recovery. For the following reasons, Defendants' motion to dismiss (DN 8) will be granted in part and denied in part.

**I.      BACKGROUND**

In June 2007, Plaintiff started a job with ECTC as a workforce liaison. (Compl., DN 1-1, ¶ 9.) Two years into her employment, Plaintiff received a diagnosis of breast cancer. (Compl., DN 1-1, ¶ 10.) She then underwent a radical mastectomy on her right side, together with the insertion of a breast expander. (Compl., DN 1-1, ¶ 10.) Plaintiff attended an appointment each week for six to eight weeks after the surgery. (Compl., DN 1-1, ¶ 10.) During the appointments, the breast expander was incrementally filled with fluid to create space for a permanent implant. (Compl., DN 1-1, ¶ 10.)

Plaintiff claims to have asserted her rights under the Family and Medical Leave Act of 1993 ("FMLA" or "Act"), 29 U.S.C. § 2601 *et seq.*, in requesting that her work schedule be modified to accommodate those post-surgery appointments. (Compl., DN 1-1, ¶ 11.) To avoid burdensome paperwork, Plaintiff's supervisor, Davenport, allegedly refused the schedule modification and told her to use vacation days for the appointments. (Compl., DN 1-1, ¶ 11.) Plaintiff further alleges that Davenport began a "campaign of harassment" following her request for FMLA leave. (Compl., DN 1-1, ¶ 12.) Plaintiff ultimately filed a formal workplace complaint against Davenport for alleged interference with her FMLA rights, "bullying[,] and aggressive behavior." (Compl., DN 1-1, ¶ 12.)

In August 2012, Plaintiff discovered a tumor in her left breast. (Compl., DN 1-1, ¶ 13.) The next month, a biopsy confirmed that the new tumor was cancerous. (Compl., DN 1-1, ¶ 13.) Plaintiff obtained the appropriate forms for FMLA leave and forwarded them to her physician. (Compl., DN 1-1, ¶ 14.) She scheduled her second mastectomy for November 8, 2012, planning to return to work two-and-a-half weeks after the surgery. (Compl., DN 1-1, ¶ 14.) But, on November 5, Davenport and the human resources director terminated Plaintiff's employment with ECTC. (Compl., DN 1-1, ¶ 15.)

Plaintiff commenced this action in Hardin County Circuit Court. (Compl., DN 1-1.) She claims violations of her FMLA rights and intentional infliction of emotional distress. (Compl., DN 1-1, Cts. I–II.) Defendants then removed the case to this Court. (Notice or Removal, DN 1.) They invoke the Court's federal question jurisdiction based on the FMLA claims and its supplemental jurisdiction to hear the state law claims for intentional infliction of emotional distress. (Notice of Removal, DN 1, ¶¶ 5–6.) Defendants now move for the dismissal of all

claims under Rule 12(b)(6), raising sovereign immunity and pointing to factual allegations they argue are insufficient as a matter of law (DN 8).

## II. STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Though "[t]he plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations in the complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

When considering such a motion, the court may examine the complaint and its exhibits, public records, items appearing in the record of the case, and documents incorporated by reference into the complaint and central to the claims. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The court must view the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in the plaintiff's favor. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. FMLA Claims

The FMLA entitles an eligible employee to twelve work weeks of unpaid leave per year. 29 U.S.C. § 2612(a)(1). An employee may take FMLA leave for a number of reasons, including self care based on "a serious health condition that makes the employee unable to perform the functions of the position of such employee." *Id.* § 2612(a)(1)(D). The FMLA declares it unlawful for any employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the Act]," *id* § 2615(a)(1), or "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]," *id.* § 2615(a)(2). The statute allows for the maintenance of a private action seeking damages or equitable relief "against any employer (including a public agency) in any Federal or State court of competent jurisdiction." *Id.* § 2617(a)(2).

Here, Plaintiff claims that Defendants interfered with the exercise of her rights under the FMLA's self-care provision by preventing her from taking leave in connection with the treatment of her breast cancer. She further claims that Defendants discharged her in retaliation for asserting her rights to self-care leave. In pursuing those claims, Plaintiff attempts to impose liability on ECTC, as well as Davenport and Owsley in their official and individual capacities, for money damages and reinstatement to her previous position.[1]

---

[1] Whether Plaintiff seeks to impose liability on Davenport and Owsley as individuals, or merely as officials, is disputed. The Complaint contains no explicit statement identifying the capacity or capacities in which Davenport and Owsley are being sued. But failure to clearly label the capacity of a defendant does not automatically limit the claim to the official capacity alone. *Moore v. City of Harriman*, 272 F.3d 769, 772–73 (6th Cir. 2001) (en banc). The Court must look to the "course of proceedings" to determine whether Davenport and Owsley received notice of Plaintiff's intent to hold them individually liable. *Id.*

     The Court concludes that the Complaint, taken as a whole, provided Davenport and Owsley with sufficient notice of Plaintiff's intent to sue them as individuals for FMLA violations and intentional infliction of emotional distress. First, the Complaint's caption and description of the parties list Davenport and Owsley by name without including their official titles. (Compl., DN 1-1, at 1–2.) Second, the requests for relief express Plaintiff's desire to recover damages from "Defendants," not ECTC exclusively. (Compl., DN 1-1, at 6–7.) Third, and most

In response, ECTC contends that sovereign immunity shields it from Plaintiff's federal claims premised on the FMLA's self-care provision.[2] The states, as sovereigns, possess immunity from suits instituted by private parties. *Alden v. Maine*, 527 U.S. 706, 713–14, 733, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc). The Eleventh Amendment concerns one aspect of this sovereign immunity, recognizing the states' immunity from suits "commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Courts and litigants often refer to the states' sovereign immunity as "Eleventh Amendment immunity." *Alden*, 527 U.S. at 713. But that convenient phrase is a misnomer because "the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Id.*; *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996). It has been long understood that sovereign immunity extends to circumstances beyond the literal text of the Eleventh Amendment, such as the present situation where a state is sued by its own citizen on the basis of a federal question. *Alden*, 527 U.S. at 727–28; *Hans v. Louisiana*, 134 U.S. 1, 9, 14–15, 10 S. Ct. 504, 33 L. Ed. 842 (1890). The states' immunity from suit originated as a feature inherent in the nature of sovereignty, and it is retained today by constitutional design, manifest in the structure and history of the nation's fundamental charter. *Alden*, 527 U.S. at 728–29, 733; *see Ernst*, 427 F.3d at 358.

Two purposes underlie the doctrine of sovereign immunity. First, sovereign immunity preserves the dignity of the states by allowing them to avoid being dragged before the courts at the instance of private parties. *Seminole Tribe*, 517 U.S. at 58. Second, the states' immunity

---

significantly, Plaintiff alleges that the FMLA's individual-liability provision, 29 U.S.C. § 2611(4)(A)(ii)(I), applies to Davenport and Owsley. (Compl., DN 1-1, ¶ 18.)

[2] In opposing the motion to dismiss, Plaintiff relies primarily on ECTC's policies and procedures, but arguments based on those internal guidelines are irrelevant in combating the defense of sovereign immunity.

from suit secures their financial integrity because it prevents private parties from raiding the public treasuries to satisfy judgments. *Id.*

The Court must first determine whether ECTC's relationship to the state entitles it to the same immunity enjoyed by the sovereign. The defense of sovereign immunity applies not only to the state itself, but also extends to government entities that act as arms of the state. *S.J. v. Hamilton Cnty.*, 374 F.3d 416, 419 (6th Cir. 2004). To identify an arm of the state, the Court looks to the follow factors: "(1) whether the state would be responsible for a judgment against the entity in question; (2) how state law defines the entity; (3) what degree of control the state maintains over the entity; and (4) the source of the entity's funding." *Id.* at 420.

ECTC is a division of the Kentucky Community and Technical College System ("KCTCS"). KRS 164.591. Kentucky created KCTCS by statute to offer two-year academic programs and technical training. KRS 164.580. A board of regents—the majority of which is appointed by Kentucky's governor—bears responsibility for governing KCTCS. KRS 164.321; *see* KRS 164.310. The state expressly recognizes KCTCS as a public institution within its postsecondary education system. KRS 164.001(17). Moreover, "state institutions of higher education under KRS Chapter 164 are agencies of the state" for purposes of Kentucky's Board of Claims. KRS 44.073(1). In light of its state creation and operation, the Court concludes that ECTC may invoke Kentucky's sovereign immunity as an arm of the state.

Like most general rules, however, the states' immunity from private suit is subject to various exceptions. Sovereign immunity does not bar litigation (1) when the state consents to suit; (2) when Congress validly abrogates the immunity; and (3) when the suit is brought against a state official under *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 441 (1908). *S & M*

*Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). There is no argument that ECTC consented to Plaintiff's suit, but the remaining two exceptions are relevant here.

The Supreme Court's decision in *Coleman v. Court of Appeals of Maryland*, — U.S. —, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012), makes clear that Plaintiff cannot rely on abrogation to overcome ECTC's immunity defense. The enforcement powers granted by § 5 of the Fourteenth Amendment allow Congress to abrogate the states' sovereign immunity in limited circumstances. *Id.* at 1333. Congress may abrogate sovereign immunity only when it adopts a remedy congruent and proportional to an identified pattern of conduct transgressing the Fourteenth Amendment. *Id.* at 1333–34. In *Coleman*, the Supreme Court found "no sufficient nexus, or indeed any demonstrated nexus, between self-care leave and gender discrimination by state employers." *Id.* at 1337. Therefore, Congress failed to effect a valid abrogation of the states' immunity in suits brought under the FMLA's self-care provision. *Id.* at 1332, 1338; *accord Touvell v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 422 F.3d 392, 405 (6th Cir. 2005). Absent an effective abrogation, Plaintiff's FMLA claims brought directly against ECTC will be dismissed as barred by sovereign immunity.

Plaintiff's remaining FMLA claims are asserted against Davenport and Owsley in their official and individual capacities. The disposition of Plaintiff's individual-capacity claims requires only brief discussion. The FMLA does not authorize claims against public employees in their individual capacities. *Mitchell v. Chapman*, 343 F.3d 811, 832 (6th Cir. 2003). The text and structure of the FMLA indicate that the provision creating individual liability is limited to certain private employees, leaving the employees of public agencies beyond its reach. *Id.* at 829–32; *see* 29 U.S.C. §§ 2611(4), 2617(a)(2). The statute precludes Plaintiff's attempt to

impose individual liability on Davenport and Owsley, and accordingly, those claims will be dismissed.

The FMLA claims against Davenport and Owsley in their official capacities are equivalent to claims against ECTC—the state entity that they represent. *Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72, 105 S. Ct. 873, 83 L. Ed. 2d 878 (1985)). Here, the viability of the official-capacity claims depends on the type of relief sought. Sovereign immunity shields Davenport and Owsley from suits for money damages to the same degree it protects ECTC. *Ernst*, 427 F.3d at 358. For this reason, the Court will dismiss the official-capacity claims for damages.

Of course, Plaintiff also sues Davenport and Owsley in their official capacities for reinstatement to her previous positon, implicating the exception to sovereign immunity first mentioned in *Ex parte Young*, 209 U.S. at 123. In *Diaz v. Michigan Department of Corrections*, 703 F.3d 956, 963–66 (6th Cir. 2013), the Sixth Circuit discussed the application of *Ex parte Young* to claims for reinstatement based on alleged violations of the FMLA's self-care provision. The *Ex parte Young* exception allows claims for prospective relief against state officials in their official capacities to proceed uninhibited by sovereign immunity. *Id.* at 964. The prospective relief, however, must be sought to end a continuing violation of federal law. *Id.* The *Diaz* court concluded that reinstatement under the FMLA qualifies as prospective relief, but it remanded to allow the district court an opportunity to determine whether the plaintiff's termination constituted a continuing violation of federal law. *Id.* at 964, 966. Though the court did not

resolve the matter entirely, its decision recognized the potential use of *Ex parte Young* to save claims similar to the ones now pursued by Plaintiff.

Defendants' motion does not address the applicability of *Ex parte Young*, nor does it acknowledge any distinction between the requests for prospective and retrospective relief. Defendants simply failed to articulate a reason for dismissing the official-capacity claims for reinstatement. They did cite *Crugher v. Prelesnik*, 761 F.3d 610, 614–16 (6th Cir. 2014)—a case concerning a *Diaz*-based claim—but made no attempt to explain the impact of that decision or the precedent upon which it relies. The Court will deny Defendants' motion to the extent it seeks dismissal of the FMLA claims for reinstatement brought against Davenport and Owsley in their official capacities. All other claims premised on the FMLA will be dismissed for the reasons stated above.

        B.      **Claims for Intentional Infliction of Emotional Distress**

In addition to her FMLA claims, Plaintiff pursues state law claims against Defendants for intentional infliction of emotional distress. ECTC responds by raising the defense of governmental immunity under Kentucky law. Governmental immunity shields a state agency from civil actions for damages "to the extent that it is performing a governmental, as opposed to a proprietary, function." *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky. 2001). As a public institution of higher education—created by the state and operated under its direction—ECTC is an agency entitled to governmental immunity, unless the act at issue is a proprietary function. *Autry v. W. Ky. Univ.*, 219 S.W.3d 713, 717–18 (Ky. 2007); *see Withers v. Univ. of Ky.*, 939 S.W.2d 340, 342–43 (Ky. 1997).

A governmental function is a public act integral to state government. *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009). A proprietary function, on the other hand,

is a non-integral undertaking of the sort a private person or business might engage in for profit. *Id.* Education stands among the principal duties of state government, and actions taken "in direct furtherance of education will be deemed governmental rather than proprietary." *Id.* Here, ECTC provides post-secondary education and training through the work of its employees. ECTC could not fulfill its educational mission without the ability to manage employment relationships, including matters of medical leave and discharge. By making decisions regarding Plaintiff's employment, ECTC performed a governmental function for which immunity is granted. Therefore, Plaintiff's state law claim against ECTC will be dismissed as barred by governmental immunity.

Plaintiff asserts identical claims for intentional infliction of emotional distress against Davenport and Owsley in their official and individual capacities. The Court will dismiss the official-capacity claims based on the preceding governmental-immunity analysis. When an employee of a state agency is sued in his official capacity, the employee possesses the same immunity as the agency itself. *Autry*, 219 S.W.3d at 717; *Yanero*, 65 S.W.3d at 522. Governmental immunity prevents Plaintiff from subjecting ECTC to suit under state tort law, and that immunity likewise shields Davenport and Owsley in their official capacities.

With respect to the individual-capacity claims, Davenport and Owsley do not raise any form of immunity defense. Instead, they argue that Plaintiff's factual allegations are insufficient to state a claim for intentional infliction of emotional distress. Kentucky adopted the tort of intentional infliction of emotional distress as defined by § 46 of the Restatement (Second) of Torts: "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky.

1984) (quoting Restatement (Second) of Torts § 46(1) (1965)) (internal quotation marks omitted).  Davenport and Owsley contend that, even when viewed in the light most favorable to Plaintiff, the alleged conduct falls far short of what could be considered extreme and outrageous.

Intentional infliction of emotional distress is a tort of "highly restrictive application." *Goebel v. Arnett*, 259 S.W.3d 489, 493 (Ky. App. 2007).  Whether the conduct complained of can reasonably be regarded as so extreme and outrageous to allow recovery is a question for the Court to decide.  *Id.*  Liability may be found only where the conduct "is a deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Craft*, 671 S.W.2d at 250; *accord Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3 (Ky. 1990).  The tort of intentional infliction of emotional distress "is not available for 'petty insults, unkind words and minor indignities.'  Nor is it to compensate for behavior that is 'cold, callous and lacking sensitivity.'  Rather, it is intended to redress behavior that is truly outrageous, intolerable and which results in bringing one to his knees." *Osborne v. Payne*, 31 S.W.3d 911, 914 (Ky. 2000) (quoting *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65, 67 (Ky. 1996); *Seitz*, 796 S.W.2d at 3–4).

Plaintiff failed to allege conduct of an extreme and outrageous nature on the part Davenport or Owsley.  To start, Plaintiff made no allegation whatsoever regarding Owsley's conduct.  Owsley appears only twice in the Complaint.  First, Plaintiff alleges that Owsley is a citizen and resident of Kentucky in describing the parties, and second, she alleges that Owsley is an "employer" within the FMLA's definition of that term. (Compl., DN 1-1, ¶¶ 8, 18.)  Those allegations, of course, do not disclose any extreme and outrageous conduct.

The Complaint does contain several allegations concerning Davenport's conduct. According to Plaintiff, Davenport told her to use vacation days in lieu of FMLA leave.  (Compl., DN 1-1, ¶ 11.)  He then allegedly began a "campaign of harassment" against Plaintiff, engaging

in "bullying and aggressive behavior." (Compl., DN 1-1, ¶ 12.) Plaintiff further alleges that Davenport terminated her employment with ECTC for invoking her rights under the FMLA. (Compl., DN 1-1, ¶ 15.)

Taken collectively, Davenport's alleged conduct is not of the extreme and outrageous kind for which the tort of intentional infliction of emotional distress provides a remedy. The workplace is too often a source of insults and indignities, but the law does not redress all rude and disheartening actions taken by employers. *See Sacharnoski v. Capital Consol., Inc.*, 187 F. Supp. 2d 843, 845 (W.D. Ky. 2002). Requiring Plaintiff to use vacation days when she preferred to take FMLA leave is not an act transgressing all reasonable bounds of decency, and the allegations of harassment and bullying are conclusory statements inadequate to support a claim. Finally, termination—even for a discriminatory reason—does not rise to the level of extreme and outrageous conduct necessary to maintain a claim for intentional infliction of emotional distress. *Id.*; *Highlands Hosp. Corp. v. Preece*, 323 S.W.3d 357, 368 (Ky. App. 2010); *Miracle v. Bell Cnty. Emergency Med. Servs.*, 237 S.W.3d 555, 560 (Ky. App. 2007); *Benningfield v. Pettit Envtl., Inc.*, 183 S.W.3d 567, 572 (Ky. App. 2005). In light of the insufficient factual allegations, Plaintiff's claims against Davenport and Owsley in their individual capacities will be dismissed.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (DN 8) will be granted in part and denied in part. The Court will deny Defendants' motion to the extent it seeks dismissal of Plaintiff's FMLA claims for reinstatement brought against Davenport and Owsley in their

official capacities.  All other claims will be dismissed with prejudice.  A separate order will be entered this date in accordance with this Memorandum Opinion.

July 20, 2015

**Charles R. Simpson III, Senior Judge**
**United States District Court**

cc:
Counsel of Record
Angela M. Woodward, *pro se*

-13-